# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE DANIEL CRUZ APONTE, | ) |
| Petitioner | ) |
| vs. | ) Civil Action No. 10-140E |
| BUREAU OF PRISONS, and ARCHIE LONGLEY, | ) Magistrate Judge Maureen P. Kelly |
| Respondents | ) |

## **OPINION**

Jose Daniel Cruz Aponte, ("Petitioner") is a federal prisoner currently confined in the Federal Correctional Institution at McKean ("FCI-McKean"), which is located within this judicial district. He is serving an aggregate sentence of 235 months imposed by the United States District Court for the District of Puerto Rico as a consequence of him being convicted in June, 1998, of various drug crimes.

Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("the Petition"), challenging a disciplinary sanction imposed for his attack upon another inmate. The sanction included the disallowance of 27 days of Good Conduct Time ("GCT") which necessarily impacts the amount of time Petitioner will serve in prison. Petitioner's sole claim is that his procedural due process rights were violated in the course of the disciplinary proceedings because the United States Bureau of Prisons ("BOP") did not comply with certain time requirements listed in the BOP's regulations for conducting disciplinary proceedings.

The first problem with Petitioner's argument is that the BOP regulations do not necessarily define what procedures are required by the Fifth Amendment procedural due process clause of the United States Constitution. Hence, a mere violation of the BOP regulations

regarding timing does not result in the denial of procedural due process under the Constitution. Even if it were otherwise, Petitioner would still not prevail. Because this is a habeas petition and Petitioner must establish that he is in custody in violation of the Constitution or laws of the United States, and because Petitioner cannot show prejudice from any claimed procedural due process violations occurring during the disciplinary proceedings given the overwhelming evidence of his guilt, including a videotape capturing Petitioner's striking of the fellow inmate, Petitioner's due process claims do not merit the grant of habeas relief. The Petition will be denied.

## I. FACTS AND PROCEDURAL HISTORY

The facts are mostly taken from the Answer.

On March 29, 2009, Incident Report No. 1850596 was issued, charging Petitioner with Assaulting Any Person in violation of Code 224. ECF No. 13-1. Incident Report No. 1850596 charged Petitioner with the following:

> On 03-29-2009 at 7:30 pm I identified inmate Cruz-Aponte #14797-069 on the CCTV as being involved in an assault on inmate (name and Register Number withheld) by the hobby craft bathroom. Specifically, inmate Cruz-Aponte is seen striking inmate (name withheld) buttocks area with his right foot. Inmate Cruz-Aponte then helped force inmate (name withheld) into the bathroom where he was assaulted by other inmates.

ECF No. 13-1 at 20. On March 30, 2009, the processing of Incident Report No. 1850596 was suspended pending a referral to the United States Attorney's Office for possible criminal prosecution. Id., at 21. On April 2, 2009, the United States Attorney's Office released the Incident Report to FCI-McKean for internal disciplinary action, i.e., declined to criminally prosecute Petitioner. Id., at 21.

On April 2, 2009, Incident Report No. 1850596 was delivered to Petitioner. Id., at 20.

Upon delivery of the Incident Report to Petitioner, an investigation was conducted. Petitioner was advised of his right to remain silent during the disciplinary process. Id., at 21. After the Incident Report was read to him, Petitioner indicated that he understood the charges against him, and he stated, "I don't know why they were fighting. I helped my brother. I just want to go to a Pen." Id., at p. 21. Petitioner did not request any witnesses. Id. At the conclusion of the investigation, the Investigating Lieutenant referred the Incident Report to the Unit Discipline Committee ("UDC") for an initial hearing. Id.

On April 3, 2009, the UDC convened for an initial hearing. At the conclusion of the hearing, the UDC referred Incident Report No. 1850596 to the Disciplinary Hearing Officer ("DHO") for final disposition. The UDC recommended that if Petitioner was found to have violated Code 224, that he should be sanctioned by: disallowance of GCT, disciplinary segregation ("DS"), and disciplinary transfer.

After the initial hearing, Petitioner was advised of his rights at the DHO Hearing. ECF No. 13-1 at 23. Petitioner waived his right to a staff representative and to witnesses at the DHO Hearing. ECF No. 13-1 at 25.

On April 9, 2009, the DHO hearing for Incident Report No. 1850596 was held at FCI-McKean. ECF No. 13-1 at 27 to 29. Petitioner was advised of his rights before the DHO. He declined to make any statement to the DHO. Id., at 27. The DHO noted that in addition to the Incident Report and Petitioner's oral statement, he also considered a videotape of the incident. Id., at 28. At the conclusion of the hearing, the DHO determined that Petitioner committed the prohibited act of assault in violation of Code 224. In reaching its decision, the DHO relied upon the written statement of the reporting staff member indicating that on March

29, 2009, at about 7:20 p.m., Petitioner was identified on closed circuit television as being part of an assault on another inmate outside of the hobby craft restroom. Petitioner was observed striking the other inmate in the buttocks area with his right foot. He then helped force the inmate into the restroom where he was assaulted by other inmates. The DHO noted that during the DHO hearing, Petitioner declined to make any statement. The DHO indicated that his decision was also based upon a videotape of the incident showing Petitioner kick the other inmate. Id.

After determining that Petitioner violated Code 224, the DHO imposed the following sanctions: disallow 27 days GCT, 30 days of disciplinary segregation, and recommend disciplinary transfer. Id., at 28.

On April 21, 2009, the DHO delivered the DHO report to Petitioner and advised Petitioner of his appeal rights. Id., at 29. Petitioner challenged the disciplinary action taken in connection with Incident Report No. 1850596 through the BOP Administrative Remedy Process and was denied at both levels of administrative review. ECF No. 13-1 at 9 to 12.

Petitioner then initiated the current action in June, 2010. The Petition was formally docketed along with a Memorandum of Law in Support. ECF Nos. 4, 5. The Answer was not filed until November 9, 2010. ECF No. 13. Petitioner then filed a Reply to the Answer. ECF No. 14.

The case was reassigned to the undersigned in June, 2011. ECF No. 15. All the parties have consented to have the Magistrate Judge exercise plenary jurisdiction. ECF Nos. 7, 9.

## II. DISCUSSION

Petitioner raises only one issue in the Petition. He claims that "Petitioner's fifth Amendment Right To Due [Process] Was violated During The Bureau of Prisons Disciplinary" proceedings. ECF No. 4 at 5. The sole factual basis for this claim appears to be Petitioner's contention that the BOP authorities failed to comply with their own internal rules governing the time limits for providing a prisoner a written copy of the disciplinary charges against him. ECF No. 5 at 4. Petitioner cites to 28 C.F.R. § 541.15(a) as the provision which the BOP authorities failed to comply with. ECF No. 5 at 4. Petitioner quotes that section as providing that "Staff shall give each inmate charged with a violation of Bureau rules a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the incident." ECF No. 5 at 4.[1] More specifically, Petitioner complains that rather than receiving his disciplinary incident report within 24 hours, he did not receive the report until more than 29 hours after the incident occurred. ECF No. 5 at 4 ("The code 224 (minor assault) violation is alleged to have happened on 3/29/2009, and staff became aware of the incident at 7:20 p.m. on 3/29/2009. A disciplinary report was not written until 3/30/2009 and delivered to petitioner at 1:01 a.m., more than 29 hours later."). Petitioner also notes that "no good cause" was given for

---

[1] Apparently, since the time Petitioner was charged with the disciplinary infraction in 2009, the relevant section of the CFR has been amended and now reads as follows:

(a)Incident report. The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

this delay of roughly 5 hours.  ECF No. 5 at 4 to 5.

Petitioner, in his Reply also seems to complain of another delay, namely the alleged delay between the time the staff became aware of the incident and the time a hearing must be held before the UDC, which is three days.  Petitioner does not specifically state how long the delay was regarding the holding of the UDC hearing.  ECF No. 14 at 2 to 3.

Petitioner then makes a leap from the violation of the BOP rules regarding time limits, which are found in the United States Code of Federal Regulations ("CFR"), to asserting that such violations of the rules, in and of themselves, also violate Petitioner's procedural due process rights.  See id.

As relief, Petitioner seeks to have the DHO's decision reversed and his GCT restored and the incident report expunged.  ECF No. 5 at 6.

The delay(s) were explained by the fact that the Incident Report was suspended pending referral for possible criminal prosecution by the United States Attorney who declined to prosecute.  ECF No. 13-1 at 21.  This suspension was explained to Petitioner by the National Inmate Appeals Administrator in response to Petitioner's appeal.  Specifically, Petitioner was informed that:

> Your incident report was suspended pending a referral to the FBI for possible prosecution.  Policy permits the suspension of an incident report for referral to other law enforcement agencies.  Although you experienced delay in the disciplinary process, we do not find, nor did you provide any evidence that your ability to prepare a defense was hindered.  Furthermore, as indicated by the Regional Director, the one day delay does not warrant expunction.

ECF No. 5 at 16.

### A. PROCEDURAL DUE PROCESS

---

28 C.F.R. §541.5 (a).

Procedural due process in the context of a prison disciplinary proceeding, where liberty interests are deprived/or disallowed,[2] require only those protections announced in Wolff v. McDonnell, 418 U.S. 539, 558 (1974). See, e.g., Piggie v. Cotton, 342 F.3d 660, 662 (7th Cir. 2003)("In the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, *see Wolff*, 418 U.S. at 564, 94 S.Ct. 2963, an opportunity to present testimony and documentary evidence to an impartial decision-maker, *id.* at 566, 570-71, 94 S.Ct. 2963, and a written explanation for the discipline, *id.* at 564, 94 S.Ct. 2963"); McCoy v. Lockhart, 5 F.3d 532 (Table), 1993 WL 361869, at *2 (8th Cir. 1993) ("In the prison disciplinary context, due process requires only that the inmate be afforded the procedures set forth in Wolff, 418 U.S. at 563-72"). We note that Petitioner is attempting to constitutionalize the procedural provisions of the CFR regarding prison disciplinary proceedings, equating those procedures required by the CFR with the procedures required by the United States Constitution. However, we reject his attempt to do so. See, e.g., Harris v. Rios, Civ.A. No. 7:08-CV-32, 2009 WL 1458205, at *6 (E.D.Ky., May 26, 2009) ("To the extent Harris challenges the disciplinary conviction based upon the . . . UDC chairperson's failure to hold a hearing within the time required by BOP regulations, it is well established that the requirements of Due Process are defined by the United States Constitution, not by an agency's internal regulations or guidelines. *Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Accordingly, an agency's failure to adhere to its own guidelines does not state a Due Process claim."); Donaldson

---

[2] We assume, without deciding, that the disallowance of good conduct time not yet earned and/or not yet vested (as opposed to the taking away of good conduct time which is already earned/vested), results in the deprivation of a liberty interest triggering the requirements of procedural due process.

v. Samuels, No. 4:CV-07-1072, 2007 WL 3493654, at *(M.D.Pa., Nov. 13, 2007)(where 28 C.F.R. § 541.15(b), providing for a 3 day time limit for UDC hearing to be held was violated, the Court held: "the Court finds that the delay in Petitioner's initial hearing does not automatically equate to a violation of his Due Process rights. *See Flanagan v. Shively*, 783 F.Supp. 922, 931 (M.D.Pa. 1992) ('The Constitution does not require strict adherence to administrative regulations and guidelines.')[.] The Constitution only requires compliance with minimal federal due process standards. Id. *Wolff* does not set a three--or seven-day limit, or any time limit, for the hearing. No Due Process violation occurred by holding petitioner's initial hearing outside of the 'ordinary' three-day period.").

Indeed, the United States Court of Appeals for the Third Circuit Court has rejected the constitutionalizing of every procedural requirement contained in the CFR which is applicable to prison disciplinary hearings and has specifically addressed the time limits contained in the CFR. See, e.g., Barner v. Williamson, 233 F.App'x 197, 199 n.5 (3d Cir. 2007) ("Moreover, while Barnes would have a liberty interest in the good time credits, Barnes has not shown that the regulation [i.e., 28 C.F.R. § 541.15(a)] specifying the time at which a person must be notified of the charge either itself creates a liberty or property interest, or that its violation necessarily abridges the constitutional protections established in *Wolff*.").

In this case, we find that the BOP regulations were not violated as they permit some period of delay for the purposes of referring matters to other law enforcement agencies. See, e.g., Scott v. Craig, No. 9:05-CV-1359, 2008 WL 4866051 at * 4 to *5 (N.D.N.Y. Nov. 7, 2008) ("Moreover, the regulations specifically require that the BOP investigation be suspended where, as here, 'it appears likely that the incident may be the subject of criminal prosecution.' 28 C.F.R.

§ 541.14(b)(1). In such cases, the regulation provides that 'the investigating officer shall suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation or other investigative agency interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur.' Id. As such, the suspension of the investigation by the BOP in this case pending the completion of the FBI's review was entirely consistent with the applicable regulations and Petitioner has not established any colorable due process claim based upon that delay."). However, even if the BOP regulations were violated, we are not convinced that mere violations of the CFR necessarily amount to violations of procedural due process.[3]

In the alternative, even if the CFR defined the Constitutional requirements of procedural due process, we would still find Petitioner's procedural due process claims fail. Petitioner cannot make out a successful procedural due process claim, even accepting his claims as true, because, as the Respondents point out, Petitioner cannot establish prejudice due to these alleged procedural violations as is his burden. ECF No. 13 at 7.

In order to make out a successful habeas claim for violation of procedural due process, a habeas petitioner must show that the procedural errors that occurred during the disciplinary

---

[3] The parties do not address and it is not clear to this Court what the remedy for a mere violation of the BOP's regulations during the course of prison disciplinary proceedings would be (perhaps, an order from the BOP appellate authorities to remand for a hearing that comports with the regulations), but as discussed below, what is clear is that absent the showing of prejudice from the violation, there is no remedy available in habeas. Harvey v. Wilson, No.6:10-CV-235-GRVT, 2011 WL 1740141, at *8 (E.D.Ky. May 5, 2011) ("Even though, 28 C.F.R. § 541.17(g) requires the DHO to ordinarily give the inmate a written copy of the decision and disposition within ten days of the DHO decision, if a prisoner does not receive the DHO report within ten days of the decision, the prisoner is not entitled to habeas relief, so long as the delay had no prejudicial effect on the prisoner's administrative remedies.") (citing, *inter alia*, Cook v. Warden, Fort Dix, 241 F.App'x 828, 829 (3d Cir. 2007)).

process which resulted in the loss or a liberty or property interest, prejudiced him or her, i.e., had an adverse effect on the outcome of the proceedings. As the United States Court of Appeals for the Third Circuit explained:

> In the absence of a recent pattern of violations, it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial. If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, *see Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a harmless error in adjudicating the violation.

Elkin v. Fauver, 969 F.2d 48, 53 (3d Cir. 1992) (quoting Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991)). Accord Cook v. Warden, Fort Dix, 241 F.App'x 828, 829 (3d Cir. 2007) ("Finally, we agree with the District Court that, even if Cook did not receive the DHO's written report within 10 days, pursuant to 28 C.F.R. § 541.17(g), the delay had no prejudicial effect on Cook's administrative appeal and thus does not provide a basis for habeas relief.").

Moreover, it is the burden of the habeas petitioner to show prejudice and prejudice in this context means that the outcome would have been different had the procedural errors not occurred. Clark v. Dannheim, 590 F.Supp.2d 426, 429 (W.D.N.Y. 2008)("To establish a procedural due process claim in connection with a prison disciplinary hearing, an **inmate must show** that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing.")(emphasis added). See also Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006) ("a prisoner cannot maintain a due process claim for failure to permit witness

testimony if he fails to show that the testimony would have affected the outcome of his case") (internal quotation marks omitted); Moles v. Holt, 221 F.App'x 92, 95-96 (3d Cir. 2007) ("Finally, Moles alleges that prison officials did not conduct a thorough investigation into the allegations raised by the incident report, as required by 28 C.F.R. § 541.14(b)(2). He argues that a proper investigation, in accordance with BOP policies, would have required prison officials to identify and question additional witnesses, and those witnesses would have given exculpatory statements. We note that a failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation. Moreover, **Moles has failed to show** that the alleged oversight caused him prejudice.")(footnote and some citations omitted, emphasis added).

Instantly, in light of the overwhelming evidence of Petitioner's guilt, including the video evidence catching him in the act, Petitioner cannot carry his burden to show prejudice.[4]

---

[4] We readily acknowledge that the rule, which requires a habeas petitioner to show prejudice in order to obtain relief in habeas, is not the rule in civil rights cases. See, e.g., Hearne v. Board of Educ. of City of Chicago, 185 F.3d 770, 779B780 (7th Cir. 1999) (in a civil rights action, the Court stated that "[a] person challenging the adequacy of procedures does not have the burden of showing that the outcome would certainly have been different had the proper procedures been followed."). We believe that the reason for this dichotomy between habeas cases and civil rights cases arises out of the very nature of habeas corpus proceedings. The *raison d'etre* of habeas corpus is release from unconstitutional or unlawful confinement. Thus, the *sine qua non* of obtaining relief by a habeas petitioner in federal court is to show that his or her confinement violates federal law. Accordingly, if the procedures utilized in the tribunal that imposed confinement/custody on the petitioner were erroneous or violated due process but the outcome was nevertheless accurate, then there is no unconstitutional confinement. In other words, even if the procedures used were wrong or illegal or violative of federal law, absent a showing of prejudice, i.e., absent a showing that the outcome would have been different had the procedural violations not occurred, the custody stemming from those flawed proceedings is not illegal. See Carey v. Piphus, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the **mistaken or unjustified** deprivation of life, liberty, or property") (emphasis added). If the deprivation of liberty as a result of the flawed procedures is not mistaken, then the deprivation of liberty, i.e., the resulting custody from those

11

## III. CONCLUSION

Hence, because Petitioner has not established a violation of the BOP's regulations, he is not entitled to relief given that the regulations permit a delay in order to refer matters to outside agencies. Even if he had established a violation of BOP's regulations, such would not amount to a violation of his procedural due process rights under the facts of this case. Alternatively, even if he had established a violation of his procedural due process rights, because on the record before this Court, Petitioner cannot carry his burden to show prejudice stemming from any alleged deprivation of procedural due process, the Petition is hereby **DISMISSED**.[5]

BY THE COURT,

s/Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: May 22, 2012

cc: JOSE DANIEL CRUZ APONTE
14797-069
FCI-McKEAN
PO BOX 8000
BRADFORD, PA 16701

All Counsel of Record via CM-ECF

---

flawed procedures is not illegal.

[5] Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B). Hence, no determination is made in this respect.